ORIGINAL

FILED

J. Gary Gwilliam, Esq.. (State Bar No. 33430)
Randall E. Strauss, Esq. (State Bar No. 168363)
GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
1999 Harrison Street, Suite 1600
Oakland, CA 94612-3528
Telephone: (510) 832-5411
Facsimile: (510) 832-1918

JAN 1 2 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiffs

MEJ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD ADAME, CONNIE. G. BENDER
and CONSTANCE DAVIS

Plaintiffs,

vs.

BANK OF AMERICA,

Defendant.

CV 09 0129

Civil Action No.

**COMPLAINT FOR DAMAGES**

**PLAINTIFFS DEMAND A TRIAL BY JURY**

E-filing

## PARTIES

**PLAINTIFFS:**

1.    RICHARD ADAME is a Hispanic-American citizen, age 57, and an employee of Defendant BANK OF AMERICA. ("BOA")..

2.    CONNIE G. BENDER is an African-American citizen, age 57, and a former employee of BOA.

3.    CONSTANCE DAVIS is an African-American female citizen, and a former employee of BOA. CONSTANCE DAVIS is Islamic.

**DEFENDANT**

4.    Defendant BANK OF AMERICA is a worldwide financial services organization with business groups offering wealth management, investment banking, private banking, securities

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

and asset management services throughout the United States.  BOA conducts its operations through its bank and non-bank subsidiaries operating in 30 states, including California.

## JURISDICTION AND VENUE

5.  Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or secure equitable relief under any Act of Congress providing for the protection of civil rights, under 42 U.S.C. § 1981, and under 42 U.S.C. §§ 2000(e)5(e) and (f).  This Court also has supplemental jurisdiction of Plaintiff's State law claims.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 2000e-5(f)(3).  The unlawful employment actions complained of herein took place within this District, the key witnesses reside in this District, and BOA has branch offices, conducts business and can be found in this District.

## CONDITIONS PRECEDENT

7.  Each of the Plaintiffs, within the appropriate time of their respective adverse employment actions and/or terminations, filed complaints against Defendant with the U.S. Equal Employment Opportunity Commission and the State of California DFEH, received right to sue notices, and filed this action within ninety-days of those right to sue notices.  Plaintiffs' Notices of Right to Sue are attached hereto as Exhibit A, and made a part hereof.

8.  Plaintiff ADAME's EEOC complaint against Defendant BOA was filed on March 18, 2008. His Notice of Right to Sue is dated October 29, 2008.

9.  Plaintiff BENDER's EEOC complaint against Defendant BOA was filed on July 2, 2008.  His Notice of Right to Sue is dated October 29, 2008..

10.  Plaintiff Davis' EEOC complaint against Defendant BOA was filed on January 3, 2008.  Her Notice of Right to Sue is dated October 16, 2008.

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

## ALLEGATIONS OF THE INDIVIDUAL PLAINTIFFS

### RICHARD ADAME'S CLAIMS

11.     ADAME has been in the banking industry for over twenty years.  In 1995, he was hired by BOA.  In January, 2005, ADAME became Vice President Sales Manager in BOA's San Jose location.  In this capacity, he supervised a multicultural loan origination office, hiring eight loan bilingual loan officers to provide loans to a primarily Hispanic clientele.  ADAME was very successful in this endeavor, meeting all of his sales goals, building his staff to eighteen loan officers and six account executive assistants, and achieving the highest penetration of ACORN loans of any BOA mortgage office.  Ninety percent of these ACORN loans went to Hispanic customers.  At all relevant times, ADAME received excellent performance reviews, and met all the job requirements of his position.

12.     On approximately May 1, 2007, Ann Thompson became Regional Manager for BOA's Northern California Region.  At all times hereinafter mentioned, Ann Thompson acted in her capacity as a supervisor and agent of BOA.  At her first meeting with her staff, Ann Thompson hugged all of her Caucasian subordinates, and pointedly ignored the three non-whites at the meeting: ADAME, BENDER and DAVIS.  Thereafter, Thompson appeared uncomfortable shaking hands with either ADAME, BENDER or DAVIS, and continued to ignore them whenever possible.  Ann Thompson treated Plaintiffs differently than she treated her Caucasian subordinates, displaying an obvious revulsion to the minority employees.  As described in this complaint, Ann Thompson engaged in a course of action designed to systematically remove all minority and older subordinates, and replace them with Caucasian and younger employees.

13.     On approximately June 6, 2007, Ann Thompson held a meeting with ADAME, in which she advised him that he was meeting or exceeding all of his performance metrics, and he should keep doing what he was doing in order to exceed his goals for the year.

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

14. On approximately August 24, 2007, Ann Thompson met with ADAME and presented him with a Written Counseling form, advising him that certain performance metrics were below expectations. At all relevant times, BOA maintained a three step disciplinary process: 1. verbal counseling, 2. written counseling; and 3. termination. By counseling ADAME in writing, Ann Thompson did not follow this disciplinary process, in that no verbal counseling was ever provided to him.

15. The written counseling of ADAME was discriminatory and pretextual, in that younger and Caucasian managers in other offices had worse performance statistics, yet they were not disciplined.

16. At the August 24, 2007 meeting, ADAME protested that he had never received any verbal counseling. Ann Thompson insisted that the June 6, 2007 meeting was verbal counseling, despite the fact that she had no criticisms of ADAME at that meeting.

17. During this time period, BOA instituted a policy of funding fewer ACORN loans, which were primarily targeted at Hispanic customers. At the August 24, 2007 meeting, ADAME advised Ann Thompson that because BOA was not willing to fund as many ACORN loans, his sales numbers would suffer, but as of that time, he was meeting all of his sales goals.

18. At the conclusion of the August 24, 2007 meeting, ADAME and Ann Thompson agreed to certain performance metrics that ADAME would be afforded an opportunity to meet in order to continue in his position as Sales Manager Vice President.

19. On approximately September 12, 2007, ADAME received a final written warning, indicating he was to be terminated. At the time he received the final written warning, ADAME had met or exceeded the performance metrics agreed upon at his August 24, 2007 meeting with Ann Thompson. The final written warning was discriminatory and pretextual. When ADAME received the final written warning, he asked Ann Thompson if she wanted him on her team.

Thompson did not respond, and merely smirked. It was obvious to ADAME that he was going to be terminated from BOA as a result of the final written warning. ADAME advised Thompson that he had met his goals, and presented her with written documentation of this. Ann Thompson was dismissive, and did not review the documentation. Rather than be terminated, on September 30, 2007, ADAME was forced to accept a demotion from Sales Manager Vice President to Mortgage Loan Officer. ADAME was replaced by a Caucasian employee, who has not equaled or surpassed ADAME's performance metrics.

20. Other, similarly situated Caucasian employees had the same or worse performance metrics in 2007, yet they were not threatened with termination or forced to accept a demotion.

21. Prior to his demotion, ADAME heard BOA supervisors, including but not limited to Ann Thompson, make ageist remarks about himself and other BOA employees. Ann Thompson told ADAME that he "seemed to lack energy." BOA targeted employees over the age of 40 for discipline, demotion and/or termination. Employees over the age of 40 were disciplined, demoted or terminated for failing to meet performance metrics which were not required of younger employees.

22. BOA maintains a system known as PFUN, which is a pricing flexibility program allowing loan sales people and managers to be competitive on a local level, offering customers discounts on the national interest rates on loans. BOA permitted Caucasian and younger employees flexibility under the PFUN system to encourage sales. Minority and older employees were not given the same flexibility. ADAME, BENDER and DAVIS were excluded from the PFUN system for periods of time after May 1, 2007, giving Caucasian and younger employees an unfair advantage over Plaintiffs. ADAME was also denied equal opportunity and access to programs and systems implemented by BOA to assist employees in meeting their performance metrics and in developing business and income.

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

1   23. On approximately October 23, 2007, ADAME formally complained in writing about

2   the above-referenced discrimination to BOA. No investigation was ever conducted into

3   ADAME's complaints, and no redress was ever given.

4   24. In approximately March, 2008, Ann Thompson told ADAME's replacement as Sales

5   Manager Vice President that "A monkey could run this office better than Richard." This

6   slanderous statement has been republished by Defendant BOA. Ann Thompson has also told

7
8   Charles Putris, a supervisor of ADAME after his demotion, that Putris should "write up" ADAME

9   because of poor job performance, when no such "write-up" was warranted or justified.

10   25. All of the foregoing discriminatory and retaliatory practices and policies by BOA have

11   significantly and adversely impacted ADAME's job success, career, compensation and health.

### CONNIE G. BENDER'S CLAIMS

13   26. Plaintiffs reallege and incorporate by reference the above paragraphs.

14   27. BENDER has been in the banking industry for over twenty years. He was hired by

15
16   Bank of America in 2002 as a Sales Manager Vice President. He successfully opened two BOA

17   offices, and always met his performance metrics. At the time of his termination, he was the

18   manager of BOA's Santa Clara Valley sales office.

19   28. When Ann Thompson became BOA 's regional manager, as described above, she

20   shunned BENDER and other minority employees. She jumped back from BENDER when he

21
22   extended his hand to her upon their meeting. On approximately June 14, 2007, BENDER

23   complained to BOA's human resources department about Ann Thompson's treatment of him, and

24   other minority employees of BOA, as descried in this complaint. He complained that she treated

25   him adversely as compared to Caucasian and younger subordinates. At no time did BOA human

26   resources investigate BENDER's complaints, or take any steps to stop Ann Thompson's

27   discriminatory treatment of him.

28
6

29.     In 2007, BENDER developed a health issue that required hospitalization for four days. While he was off from work, Ann Thompson directed BOA regional staff employees to review BENDER's sales office. At Ann Thompson's direction, BOA regional staff came to the Santa Clara Valley sales office every day for three weeks, destroying morale and undermining BENDER's leadership and ability to manage his store, threatening BENDER's subordinates with adverse employment actions. Caucasian and younger employees were not treated in this adverse manner by BOA.

30.     During approximately June 11 and 12, 2007, BOA held a Sales Managers Meeting for the Northern California Region in San Francisco, California. During this two day meeting, Ann Thompson ignored and shunned the three minority sales managers present, ADAME, BENDER and DAVIS.

31.     During 2007, BOA participated in the Intero Real Estate Alliance, a program offering sales and income opportunities to BOA employees. BENDER was denied the opportunity to participate in this program, although Caucasian and younger BOA employees were allowed to participate. During 2007, BOA routinely allocated more marketing, facilities and recruiting dollars and resources to sales offices managed by Caucasian and younger employees, to the detriment of BENDER, ADAME and DAVIS.

32.     On May 13, 2008, BENDER was terminated by BOA, allegedly for allowing his assistant access to his computer in his absence, in violation of BOA rules. The stated reason for his termination is pretextual. BENDER was terminated due to his race and age, and in retaliation for his protected activities of complaining of discrimination, as described above. Caucasian and younger employees of BOA routinely allowed their assistants to access their computers, and were not disciplined or terminated.

/ / /

Complaint for Damages
Adame, et al. v. Bank of America

33.    All of the foregoing discriminatory and retaliatory practices and policies by BOA have significantly and adversely impacted BENDER's job success, career, compensation and health.

## CONSTANCE DAVIS' CLAIMS

34.    Plaintiffs reallege and incorporate by reference the above paragraphs.

35.    DAVIS was first employed by BOA as a Sales Manager Vice President in March, 2004. After leaving for a period of time, DAVIS was re-hired by BOA on approximately November 30, 2006 as a Sales Manager Vice President in Oakland, California. DAVIS was permitted to hire her own team of subordinates, which was comprised entirely of minorities. When DAVIS was re-hired, she negotiated with BOA to receive a marketing budget and administrative assistance. In addition, DAVIS' request that her operation for BOA be located in Berkeley, California was agreed to by BOA.

36.    During DAVIS' employment with BOA, the bank engaged in a pattern and practice of assigning minority managers to new, start-up stores, where the potential for income was less than at existing stores. New Caucasian managers were assigned to existing stores, with a correspondingly greater opportunity to earn income.

37.    While the Berkeley, California office was being readied, DAVIS was assigned to work out of a BOA location in Oakland, California.

38.    In approximately January, 2007, DAVIS learned that her sales production was being credited to another manager. This impacted her ability to earn income, and direct the operations of sales staff assigned to her for supervision. DAVIS made approximately sixty requests to correct this situation. BOA did not correct this error, despite DAVIS' repeated requests, prior to her termination. This materially affected DAVIS in the performance of her job, in that inaccurate performance metrics were reported to BOA regarding her.

8

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

39.     Ann Thompson continually shunned and ignored DAVIS and other minority and younger managers, as alleged above.

40.     In June 2007, at a sales manager meeting, BOA assigned marketing budgets to Sales Managers in the Northern California region. BOA provided marketing budgets of $20,000.00 or more to Caucasian and younger managers. DAVIS was given a marketing budget of $6,000.00. BENDER was given a marketing budget of $7,000.00. This significantly lower marketing budget for minority managers was discriminatory and an adverse employment action. Ann Thompson accused DAVIS of having an "attitude" during this meeting.

41.     Despite the agreement to provide her with administrative assistance, DAVIS was denied an Account Executive Assistant ("AEA") by BOA. AEA were routinely assigned to Caucasian managers. The refusal to provide an AEA to DAVIS was discriminatory and an adverse employment action.

42.     At her first meeting with Ann Thompson after she became her supervisor, DAVIS advised Thompson that she required an AEA. She also expressed her concern that her marketing budget was lower than other managers. DAVIS also told Thompson that her sales staff had not been provided with phone numbers or desks, which limited their ability to make sales, and prohibited DAVIS from hiring additional sales staff. DAVIS requested a temporary office where she and her staff would have enough space and resources to function in their jobs. Caucasian managers were afforded this assistance from BOA. Although DAVIS and her subordinates had better production metrics than Caucasian sales teams, they were not provided the same support by BOA that Caucasian managers received. DAVIS' sales team complained to her about their different treatment by BOA because they were minorities. DAVIS informed BOA of these complaints. Ann Thompson promised to address DAVIS' concerns and complaints. When Ann Thompson did not address these issues adequately, DAVIS complained to BOA human resources

Complaint for Damages
Adame, et al. v. Bank of America

about differential and discriminatory treatment of herself and her minority staff. BOA human resources never investigated or remedied DAVIS' complaints. BOA never addressed DAVIS' concerns and complaints.

43.     On approximately August 16, 2007, and other occasions, Ann Thompson berated DAVIS for her apparel, which included a head wrap. As a Muslim, DAVIS is required to wear a head wrap. Ann Thompson's comments regarding DAVIS' attire were discriminatory and an adverse employment action.

44.     During her employment, Ann Thompson reassigned accounts that previously were assigned to DAVIS and her team to Caucasian, non-Muslim managers. This was discriminatory and an adverse employment action.

45.     In approximately August, 2007, following DAVIS's complaints to BOA of discrimination on the part of Ann Thompson, DAVIS was issued a verbal warning by Ann Thompson. The stated reason for the verbal warning was that DAVIS was "disengaged." This reason was pretextual. This verbal warning was an adverse employment action in retaliation for DAVIS' complaints of discrimination and harassment based on race and religion. DAVIS complained to BOA human resources about this discriminatory adverse employment action. BOA did not investigate this complaint, and took no action to address it. At the time of the verbal warning, DAVIS was meeting all of her performance metrics.

46. Ann Thompson ordered DAVIS and BENDER to sit in their offices from 8:00 a.m. to 5:00 p.m. during working days. Caucasian and younger managers were not so instructed. This constituted an adverse employment action, in that much of the work of Sales Manager Vice President at BOA required work in the field, away from the office. Ann Thompson's instructions to DAVIS and BENDER impaired their ability to be effective in their jobs.

Complaint for Damages
Adame, et al. v. Bank of America

47.     BENDER also received a verbal warning for being "disengaged". This stated reason for the verbal warning was pretextual.  The verbal warning a discriminatory adverse employment action.

48.     In approximately August, 2007, DAVIS and her team were assigned to a temporary location in the basement of an Oakland, California BOA facility.  After one day in this facility, DAVIS became ill.  DAVIS suffered headaches and other ailments after each working day in this basement facility.  The basement facility was not equipped with phone lines, copy machines, fax lines, and other necessary tools to conduct business on behalf of BOA.  Every office set up by BOA for Caucasian, non-Muslim supervisors had these tools provided by BOA.  DAVIS arranged for her team to move to available space in another BOA facility, but Ann Thompson vetoed the move.

49.     In approximately August, 2007, Ann Thompson publically told DAVIS at a sales manager meeting, "I suggest you stay in your own hood."  This comment was an obvious negative reference to her race.

50.     In approximately September 2007, a BOA executive told ADAME, "You know DAVIS and BENDER, those kind of people always want something for nothing, but you know they are dead men walking."  ADAME reported these remarks to BOA, yet no investigation was ever undertaken by BOA.

51.     In approximately September, 2007, DAVIS' doctor advised her not to continue working in the BOA basement facility because it was making her ill.  DAVIS learned that the basement had been flooded earlier, and was full of mold.  DAVIS requested that BOA test the air quality of the basement.  BOA found that the basement contained toxic mold that presents a health risk to human occupants.  DAVIS was diagnosed with restrictive airway disease caused by an allergic reaction to the toxic mold in the basement facility of BOA.  DAVIS doctor took her off

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

1   work for approximately thirty days. Other members of DAVIS' team also became ill from

2   working in BOA's basement facility.

3       52.     While DAVIS was off work due to her illness, she stayed in communication with

4   BOA, and was advised by BOA human resources that she could use accrued vacation and sick

5   leave for this absence. Ann Thompson and others at the Northern California regional office told

6

7   DAVIS that she was not entitled to sick leave or vacation time to recover from her illness, and

8   closely monitored her absences. Other Caucasian and non-Muslim managers were permitted to

9   use sick leave and vacation without interference by BOA.

10      53. While DAVIS was off work due to her sick leave, Ann Thompson told a co-worker

11  that DAVIS would no longer be with the company in November, 2007, and her office would be

12  available.

13

14      54. On approximately October 15, 2007, DAVIS returned to work at BOA. She provided

15  the regional office with documentation of all of her doctor's appointments, and advised Ann

16  Thompson of all her upcoming doctor's appointments. Ann Thompson gave DAVIS a final

17  written warning for missing work during her illness, and violating BOA's call-in policy. DAVIS

18  had called in sick in compliance with the policy. Ann Thompson became furious with DAVIS for

19  taking notes during this meeting, and instructed her not to take notes. The reasons given for this

20  final written warning were pretextual. The final written warning was a discriminatory act by BOA

21

22  based upon DAVIS' race and religion. DAVIS complained to BOA human resources about this

23  final written warning. No investigation was ever conducted by BOA.

24      55. On approximately October 29, 2007, DAVIS had a doctors appointment. She had

25  previously provided Ann Thompson with written documentation of this appointment. She

26  reminded Ann Thompson by email of this appointment.

27

28

Complaint for Damages
Adame, et al. v. Bank of America

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

56. On Approximately November 5, 2007, Ann Thompson terminated DAVIS for not calling in sick for the October 29, 2007 doctor's appointment. The stated reason for her termination was pretextual. DAVIS was terminated because of discriminatory animus by BOA due to her race and religion.

57. When DAVIS requested a copy of her personnel file from BOA, it did not contain any of her complaints to BOA human resources, nor documentation regarding her illness and absences from work for medical reasons. It was obvious to her that her personnel file had been altered.

## COUNT I

## THE CIVIL RIGHTS ACT OF 1866

## 42 U.S.C. § 1981

58.     Plaintiffs reallege and incorporate by reference the above paragraphs.

59.     BOA has discriminated against Plaintiffs by denying them the same rights as enjoyed by Caucasian employees with regard to the making, performance, modification and termination of their employment relationship with BOA and with regard to the enjoyment of all benefits, privileges, terms and conditions of that relationship in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981.

60. BOA's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiffs under the law.

61. By virtue of BOA's conduct as alleged herein, Plaintiffs have been injured in an amount according to proof.

## COUNT II

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## 42 U.S.C. §§ 2000e, *et seq.*

62. Plaintiffs reallege and incorporate by reference the above paragraphs.

13

63. BOA has discriminated against Plaintiffs on account of race and religion, in violation of Title VII, the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §§ 2000e, *et seq.*, by maintaining a pattern and practice of assigning African-American, Hispanic and Muslim employees to lower net-worth territories than Caucasian and non-Muslim employees, by maintaining a pattern and practice of making employment decision favoring Caucasian and non-Muslim employees over African-American, Hispanic and Muslim employees, by maintaining a pattern and practice of compensating African-American, Hispanic and Muslim employees less than Caucasian and non-Muslim employees who hold either the same or similar positions, by retaliating against employees who assert their civil rights, by denying Plaintiffs equal terms, opportunities, resources, and conditions of employment as Caucasian and non-Muslim employees with same or similar positions, or positions with similar responsibilities and duties; and by maintaining a pervasive atmosphere perpetuating discriminatory treatment.

64. By virtue of BOA's conduct as alleged herein, Plaintiffs have been injured in an amount according to proof.

## COUNT III

### AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

65. Plaintiffs reallege and incorporate by reference the above paragraphs.

66. As alleged above, BOA discriminated and retaliated against Plaintiffs ADAME and BENDER because of their age, in violation of the Age Discrimination in Employment Act, by denying them the same rights as enjoyed by younger employees with regard to the making, performance, modification and termination of their employment relationship with BOA and with regard to the enjoyment of all benefits, privileges, terms and conditions of that relationship.

67. BOA's conduct has been intentional, willful and conducted in callous disregard of the rights of Plaintiffs under the law.

14
Complaint for Damages
Adame, et al. v. Bank of America

68. By virtue of BOA's conduct as alleged herein, Plaintiffs have been injured.

## COUNT IV

### DISCRIMINATION

#### [Cal. Gov. Code §§12940 et seq.]

69. Plaintiffs reallege and incorporate the above paragraphs.

70. At all times relevant to this complaint, California Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect. Under California Government Code § 12940(a), it is unlawful for an employer to terminate or otherwise discriminate against a person in compensation or in terms of condition or privileges of employment on account of age, disability, national origin, religion or sex.

71. As set forth above, Plaintiffs are members of a protected class.

72. Plaintiffs age, race, and/or religion were a motivating factor in Defendants' decision to discriminate against, harass, demote and terminate Plaintiffs. Such discrimination violates Government Code § 12940(a) and has resulted in damage to Plaintiffs.

73.. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have each suffered damages including, but not limited to, loss of income and benefits, and have suffered emotional distress and other damages.

74. In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard to Plaintiffs' rights, entitling each Plaintiff to awards of punitive damages.

## COUNT V

### HARASSMENT

#### [Cal. Gov. Code §§12940 et seq.]

75. Plaintiffs realleges and incorporates the above paragraphs.

15

76.     At all times relevant to this complaint, California Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect. Under California Government Code § 12940(j) and (k), it is unlawful for an employer, its supervisors and/or agents to harass a person and is unlawful for an employer to fail to take all reasonable steps necessary to prevent harassment.

77.     As set forth above Defendant created a hostile work environment in violation of .California Government Code § 12940 *et seq.*

78.     Defendant BOA failed to take any reasonable steps to either correct the hostile work environment or to prevent discrimination or harassment from occurring in the workplace as required by California Government Code § 12940(k).

79.     Plaintiffs' age, religion and race were a motivating factor in Defendants' harassment. Such discrimination violates Government Code § 12940 *et seq.* and has resulted in damage to Plaintiffs.

80.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have each suffered damages including, but not limited to, loss of income and benefits, and have suffered emotional distress and other damages.

81.     In doing the things alleged herein, Defendant's conduct was despicable. Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard to Plaintiffs' rights, entitling each Plaintiff to awards of punitive damages.

## COUNT VI

## RETALIATION

82.     Plaintiffs reallege and incorporate the above paragraphs.

83.     At all times relevant to this complaint, California Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect. Under Government Code §

16

Complaint for Damages
Adame, et al. v. Bank of America

1  12940(h), it is unlawful for an employer to retaliate against a person because that person has

2  opposed any practices forbidden by the Fair Employment and Housing Act or because the person

3  has filed a complaint, testified, or assisted in any proceeding under the Act.

4
5       84.     Plaintiffs were each harassed and subjected to a hostile work environment and

6  other adverse employment action after complaining about Defendant's pervasive discrimination.

7       85.     Plaintiffs were engaged in a legally protected activity with Defendants, namely,

8  opposing unlawful employment practices, making a complaint, about illegal employment practices

9  including race, religion and age.

10      86.     Plaintiffs' participation in legally protected activities was a motivating factor in

11  BOA's actions toward Plaintiffs, as described above.

12      87.     Defendants' actions caused Plaintiffs to suffer, and to continue to suffer, injury,

13  including lost benefits and wages, severe emotional distress and physical injury, the exact amount

14
15  of which will be proven at the trial. Such retaliation violates Government Code § 12900 *et seq.*

16  and has resulted in damage to Plaintiffs.

17                                  **COUNT VII**

18          **WRONGFUL TERMINATION/ DEMOTION/ RETALIATION**
19               **IN VIOLATION OF PUBLIC POLICY**

20  **[California Constitution, Article I, Section 8; Cal. Gov. Code §§12940 et seq., 12945.2;**
     **Cal. Bus. & Prof. Code §§ 17200, 17500 *et. seq.*; Civ. Code §§ 1572, 1709, 1710; Penal**
21               **Code §§ 484, 536; Cal. Lab. Code §1102.5,]**

22      88.     Plaintiffs reallege and incorporate the above paragraphs.

23      89.     The public has a fundamental interest in a workplace free from discrimination.

24
     This fundamental policy is embodied in the California Constitution, Article I, Section 8. (See Silo
25
26  v. CHW Medical Foundation, 27 Cal. 4th 1097, 1105 (2001).

27      90.     It is against the public policy of the State of California for employers to discharge

28                                       17

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

1    employees in a discriminatory manner, harass employees, or retaliate against employees for

2    participating in legally protected activities, and/or opposing any practices forbidden under

3    California Government Code, § 12900 *et seq.*  This fundamental public policy is embodied in the

4    California Government Code, § 12900 *et seq.* and the California Constitution, Article I, Section 8.

5
6    (See City of Moorpark v. Sup.Ct., 18 Cal. 4th 1143, (1988

7    91.    As set forth above, discrimination was a motivating factor in the adverse

8    employment actions suffered by Plaintiffs.

9    92.    As set forth above, participation in legally protected activities was a motivating

10   factor in the termination, harassment, and retaliation to which Plaintiffs were subjected by

11   Defendant BOA.

12   93.    The wrongful conduct alleged herein was in contravention to laws protecting

13   employees in the workplace, California's Constitution, and/or the declared and firmly established

14   public interest and public policy of the people of the State of California mandating that all persons

15
16   have the fundamental right to engage in protected activity and to be free from discrimination,

17   harassment, and retaliation in the workplace.

18   94.    Defendants' wrongful conduct in violation of fundamental public policies has

19   caused Plaintiffs to suffer damages including, but not limited to, loss of income and benefits,

20   emotional distress, and other damages.

21
22   95.    In doing the things alleged herein, Defendant's conduct was despicable.

23   Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious

24   disregard to Plaintiffs' rights, entitling each Plaintiff to awards of punitive damages.

25   / / /

26   / / /

27   / / /

28

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

## COUNT VIII

## DEFAMATION

96.     Plaintiff realleges and incorporates the above paragraphs.

97.     Defendants have published false information to others, within the company and within the industry, falsely accusing Plaintiffs of incompetence in their profession, as described above.

98.     Defendants' false publications are *per se* defamatory.

99.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages including, but not limited to, loss of reputation, emotional distress, and other damages.

100.    In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard to Plaintiffs' rights, entitling each Plaintiff to awards of punitive damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PLAINITFFS ADAME, BENDER and DAVIS respectfully request relief as follows:

1. For special and economic damages, including back pay and front pay, benefits and for consequential damages, for all causes of action;

2. For general and non-economic damages for all causes of action;

3. For punitive damages, costs and attorneys fees, including a contingency fee enhancement beyond the lodestar;

4. For prejudgment interest at the prevailing legal rate;

5. For such other and further relief as the Court may deem proper.

DATED: January 12, 2009

By: _____

J. Gary Gwilliam
Randall E. Strauss
Attorneys for Plaintiffs

98883

Complaint for Damages
Adame, et al. v. Bank of America