IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE G. BENDER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>　　　　Defendant.　　　　　　　　／ | No. C 09-129 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO C. GEORGE BENDER** |

On June 18, 2010, the Court held a hearing on defendant's motion for summary judgment as to plaintiff Bender. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiff Connie G. Bender (known as C. George Bender) is a 58-year old African-American man. Bender has worked in the banking industry for over twenty years. Bender Decl. ¶ 11. In 2002, Bender was hired as a Sales Manager for Bank of America's (the "Bank") Fremont Office. In 2006, Bender temporarily left the Bank, but was rehired by Charles Putris, the then-Regional Executive, as the Sales Manager in the Santa Clara Office in San Jose. As Sales Manager, Bender supervised a team of Mortgage Loan Officers ("MLOs") who dealt directly with customers. Individual offices were organized into geographical regions, which were led by the Regional Executives.

In May 2007, Ann Thompson became the new Regional Executive for Bender's region. Thompson supervised thirteen Sales Managers, including Bender and plaintiffs Richard Adame and

Constance Davis. Bender, Adame and Davis were the only minority Sales Managers in the Bank's Northern California region. All of the Sales Managers except Davis were over 40 years of age, and five were over 50. Pappas Decl. ¶ 10. Thompson is Caucasian, and when she became Bender's supervisor, she was 49.[1] All three plaintiffs claim that Thompson discriminated against them on account of their race, age, and/or religion.

Bender claims that on several occasions Thompson displayed racial and age-based animus towards him. Bender claims that at a May 2007 meeting, he approached Thompson to congratulate her on her promotion, and when he extended his hand to shake her hand, she pulled her hand back. Bender Decl. ¶ 25. Bender also states that Thompson "had what appeared to me as a dismissive look on her face." *Id*. Bender states in his declaration that he saw other non-minority Bank employees shaking hands with Thompson at the meeting, although in his deposition Bender stated that he could not recall whether she shook hands with the other employees. *Id*. ¶ 28; Bender Depo. at 180:14-17.[2] Bender also states that during that meeting he raised his hand to participate and ask questions, and that Thompson looked at him and did not call on him, Adame or Davis. Bender Decl. ¶ 29. Thompson denies this interaction, and testified at her deposition that she frequently hugged Bender both at his office and sales meetings; Bender testified at his deposition that Thompson hugged him on one occasion. *Compare* Thompson Depo. at 132:16-134:5; Bender Depo. at 176:2-7.

Bender also claims that Thompson made a racist comment at a September 2007 sales meeting when she told plaintiff Davis, an African-American Sales Manager, to "stay in your hood." *Id*. ¶ 30. The Bank asserts that Thompson does not recall making such a comment, but that Thompson has discussed with Sales Managers the importance of soliciting business only in their own regions. Def's Motion at 5:19-20, citing Thompson Decl. ¶ 22.

Bender also claims that Thompson made racist and age-based comments during a performance

---

[1] Thompson's birthday is October 11, 1957. Thompson Decl. ¶ 1.

[2] Bender also states that at this meeting, plaintiff Adame told Bender that he had also tried to shake Thompson's hand and she reacted in a similar manner, and that plaintiff Davis told Bender that Thompson did not shake her hand. Defendant objects to this testimony as hearsay. The Court SUSTAINS defendant's objections, as plaintiff is offering these out of court statements for the truth of the matter asserted. The Court does not rule on the parties' remaining evidentiary objections because this order does not rely on the evidence at issue.

review in or around March 2008. During that meeting, Thompson told Bender that he "lacked energy." Bender Decl. ¶ 37. Bender states that "Since I worked at least 12-hour days, sometimes 6 days a week, I told her that I didn't agree with her." *Id.* During that same meeting, either Thompson or Nancy Chambard, the Regional Coordinator, told plaintiff he was "angry." *Id.* ¶ 38; Bender Depo. at 200:6-202:22. Bender states, "I was surprised and expressed that I was not angry, just concerned about the items I had mentioned on my business plan, such as marketing funding, etc." Bender Decl. ¶ 38.

Bender claims that sometime in June 2007[3] he contacted Heidi Goluma to file a complaint against Thompson. Bender Decl. ¶ 33. Bender states that he contacted Goluma because he understood she was the national head of human resources. *Id.* Bender states that Goluma never returned his call, and that about three days after he called Goluma, he received a call from someone he later learned was Tom Patch of Advice & Counsel, the Bank's Human Resources Department. Bender states,

> . . . I told Tom Patch about Ann Thompson's behavior, that it was discriminatory and unprofessional. Mr. Patch asked me if I wanted to sue the Bank. I said no, I liked the Bank. I explained to Mr. Patch that I wanted this brought to Ms. Thompson's supervisor and requested that Ann Thompson be enrolled in sensitivity training.
>
> Mr. Patch advised me that he would investigate the matter and I replied that I would wait to hear what the outcome of the investigation was. I never heard back from Mr. Patch or anyone and Advice & Counsel about my complaint of discrimination about Ann Thompson.

*Id.* ¶¶ 35-36. Bender has submitted evidence showing that under customary Bank procedures, Bender's complaint would have been documented and Advice & Counsel would have investigated the complaint, which generally would have included interviewing Thompson and Bender. *See* Rhine Depo. at 94:17-97:11.

According to Bank of America, the Bank maintains detailed records of all calls to Advice & Counsel. Pappas Decl. ¶ 3. The Bank does not have any records referencing a complaint by Bender about unfair treatment by Thompson, although the Bank does have records showing that Bender made several calls to Advice & Counsel seeking advice concerning his subordinates' behaviors and

---

[3] The papers are unclear regarding when plaintiff claims he contacted Goluma and Advice & Counsel. Plaintiff's opposition papers state that he made the complaint in June 2007. However, plaintiff's declaration states that he contacted Goluma "about two days" after a September 2007 sales meeting, and that it was approximately three days after he called Goluma that he spoke with Patch. Bender Decl. ¶¶ 30, 33, 35.

3

performance. *Id*. ¶ 8. Bank of America has also submitted a declaration from Heidi Goluma, which states that she has a notation in her daily calendar that plaintiff left her a message on June 13, 2007, that she did not return the call and never spoke to plaintiff, and that she does not recall whether she passed plaintiff's information on to anyone else. Goluma Decl. ¶ 9. Goluma also states that she has no recollection of ever speaking to anyone about plaintiff. *Id*. ¶ 10. Goluma also states, "I sometimes maintained files relating to issues brought to me by Advice and Counsel when I was a Human Resources Executive. There are no notes in my files relating to Connie George Bender [or the other two plaintiffs]. I have reviewed my emails and have no emails that mention Connie George Bender [or the other two plaintiffs]." *Id*. ¶ 11. Bank of America has also submitted Thompson's deposition testimony in which she states that when she terminated plaintiff she was not aware that he had lodged a complaint against her.

In May 2008, Thompson terminated Bender based upon his violation of the Bank's policies prohibiting employees from sharing computer passwords with other employees. The circumstances surrounding Bender's termination are as follows. Sales Managers have access to confidential customer and proprietary business information, and much of this information is stored on or accessible through the Sales Managers' assigned laptop computers. The Bank has policies regarding safeguarding confidential information, as well as policies concerning laptop security. Ryan Decl. Ex. C-E. These policies require, *inter alia*, that employees protect customers' confidential information, that all laptops be password protected, and that employees not leave laptops unattended. *Id*. These policies also prohibit employees from sharing computer passwords with anyone, including other Bank employees or personal assistants. *Id*.

In May 2008, Bender went on vacation. While he was on vacation, Harold Michaud, the Area Manager for the Region, visited the Santa Clara office. Michaud noticed that, contrary to Bank policies, Bender had left his laptop computer in his office, and that it was on. Michaud contacted Thompson and Regional Coordinator Nancy Chambard, and Thompson and Chambard both directed Michaud to contact Advice & Counsel. Advice & Counsel directed Michaud to get Bender's assistant, My Vo, as a witness and to secure the laptop. Michaud asked Vo to shut down the laptop so he could take possession of it until Bender returned. Vo entered Bender's password, logged on to Bender's computer, and shut it

4

down. When Michaud realized that Vo had Bender's password, he contacted Advice & Counsel a second time and reported that Vo had logged on to Bender's laptop.

Jeanette Low, a Senior Investigator from the Bank's Investigative Services Department, was assigned to investigate the matter. Bender admitted that he gave Lo his password, but stated that he did so because Lo was his "assigned proxy," and that as his proxy, Lo used Bender's password to take care of Bank business for Bender at his direction. Bender Decl. ¶¶ 46-47. The Bank has submitted evidence that it was permissible for employees to designate other employees as their proxies with limited access to e-mail, etc., but that under those circumstances, the proxy used the *proxy*'s own password to access the other employee's computer, e-mail, etc. Based upon Bender and Lo's violation of Bank policies, Advice & Counsel and Low recommended that both Bender and Vo be terminated. Thompson terminated Bender, and Vo was permitted to resign because she acted at the direction of Bender, her supervisor. Vo is coded as "not rehirable" at the Bank because her resignation was forced. Pappas Decl. ¶ 11.

Bender claims that Thompson discriminated against him on account of his race and his age, and that the reason provided for his termination was pretextual. While Bender admits that he violated the Bank's written policy against sharing passwords, he asserts that he was confused about the Bank's policy regarding proxies, and that there are no written rules or guidelines for the Bank's proxy system. Bender also claims that other employees, including Thompson, frequently shared their passwords and were not terminated for doing so. Bender also claims that ordinarily Thompson followed a progressive system of discipline involving verbal, written and final warnings, but that she did not do so with him. At the time of his termination, Bender was not subject to any written warnings for his performance.[4]

The Bank closed the Santa Clara office in 2008, shortly after Bender's termination. After Bender was terminated and prior to the closing of the Santa Clara office, Bender's position was not filled. Michaud, who worked out of Oakland and who was the Area Manager, assisted the Santa Clara

---

[4] The parties dispute whether Bender was performing adequately. Bender states that during his career with the Bank, he always met his performance goals, received multiple quarterly and annual bonuses, and received good ratings from Charles Putris, his manager from 2002 until May 2007, when Thompson became his supervisor. The Bank asserts that under Bender's direction, the Santa Clara Office was underperforming. As Bender was not terminated based on his performance, the parties' dispute regarding his performance is need not be resolved at this juncture.

5

office until its closure. Thompson Depo. at 150:15-151:25.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.  § 1981, FEHA and Title VII race discrimination claims and FEHA failure to prevent discrimination claim**

Defendant moves for summary judgment on Bender's race discrimination claims under § 1981, FEHA and Title VII, as well as Bender's claim for failure to prevent discrimination under FEHA. Defendant contends that plaintiff cannot make out a *prima facie* case of race discrimination because plaintiff has no evidence of racial animus. Defendant further contends that even if plaintiff can make

6

out a *prima facie* case, Bank of America had a legitimate, non-discriminatory reason for plaintiff's termination, namely plaintiff's violation of the password policy as documented by the internal Bank of America investigation. Defendant argues that plaintiff's failure to prevent discrimination claim fails for the same reason, namely that Bender cannot show that he was subject to discrimination.

In response, plaintiff contends, *inter alia*, that he was treated differently than non-African American employees. Plaintiff has submitted evidence that other employees shared passwords, and that Thompson has engaged in progressive discipline with other employees.[5] The Bank counters that there is no evidence that Thompson was aware that other employees were sharing passwords. The Bank also argues that Thompson terminated Vo, an Asian-American woman, for violating the password policy, and that Thompson used progressive discipline for performance problems, not for violations of the Bank's Code of Ethics. The Bank also argues that Bender was an at-will employee, and thus the Bank was not required to engage in progressive discipline before terminating him.

Although it is a close call, the Court finds that there are disputes of fact such that summary judgment on plaintiff's race discrimination claims is inappropriate. Bender has submitted evidence that non-African American employees commonly shared passwords. Bender has also submitted evidence showing that Thompson herself violated the written password policy by sharing her password with her assistants. Relying on the testimony of Jeanette Low, defendant argues that Thompson did not violate the password policy because she only shared her password in order to enable the IT department to synchronize her Blackberry with her computer. However, as defendant recognizes, the *written* password policy prohibits any and all sharing of passwords; the policy states that associates must "[h]ave a proper password and safeguard it (no sharing, don't leave it on a sticky note)." Ryan Decl., Ex. D. While defendant persuasively argues that, as a matter of common sense, employees would be required to share their passwords for temporary and limited IT purposes, it is nevertheless true that the written policy prohibits any and all sharing of passwords. Thus, there is a triable issue of fact as to whether there is

---

[5] Bender also claims that he was replaced by Michaud, and that this is further evidence of discrimination/pretext. However, the evidence shows that Bender's position was not filled, and that during the short time between Bender's termination and the closure of the Santa Clara office, Michaud fielded calls from Bender's former employees until a decision was made to close that branch. *See* Thompson Depo. at 67:11-70:6; 150:12-151:6.

7

discretion in addressing violations – "technical" or otherwise – of the Bank's password policy. Bender had never been previously disciplined for violating the password policy, and the record suggests that Bender believed that it was permissible to share his password with Vo as his proxy. Although there is no evidence that Thompson was aware that other employees shared passwords, there is evidence that Thompson engaged in progressive discipline with other employees. Viewing the evidence in the light most favorable to plaintiff, including plaintiff's testimony that Thompson refused to shake his hand and refused to call on him and the other minority Sales Managers at meetings, the Court finds that summary judgment is not appropriate and accordingly DENIES defendant's motion. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004).

## II.     FEHA retaliation claim[6]

Plaintiff alleges that Thompson retaliated against him for filing the complaint by terminating him on May 13, 2008. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Morgan v. Regents of the Univ. of California*, 88 Cal. App. 4th 52, 69 (2000). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Id.* (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)).

Bank of America contends that Bender cannot demonstrate the first and third elements of a retaliation claim. First, Bank of America argues that Bender did not engage in protected activity because even assuming that he called Advice & Counsel and complained about Thompson (which Bank of America disputes), the Bank argues that there is no indication that Bender informed Advice & Counsel that he believed Thompson discriminated against him on the basis of race or age. However,

---

[6] It is unclear whether plaintiff is also alleging a claim for retaliation under Title VII. Although the parties' summary judgment papers only address retaliation under FEHA, the amended complaint appears to allege retaliation under Title VII. *See* Amended Compl. ¶ 63.

1 plaintiff has raised a triable issue of fact on this point because his declaration states that he told Mr. Patch about Thompson's "discriminatory and unprofessional" behavior. Bender Decl. ¶ 35. *See Yanowitz v. L'Oreal USA Inc.*, 36 Cal. 4th 1028, 1046-47 (2005).

Bank of America also argues that plaintiff cannot show a causal link because Thompson did not know about any complaint when she terminated plaintiff, and because Bender was terminated 11 months after he allegedly made his complaint. Bank of America relies on Thompson's deposition testimony stating that she was unaware that plaintiff had lodged a complaint with Advice & Counsel, Bender's deposition testimony stating that he does not know if Thompson ever learned of the call, and Goluma's statement that she has no recollection of ever speaking to anyone about plaintiff. However, Bender states that he made the complaint to Tom Patch at Advice & Counsel, not Goluma, and he has submitted evidence showing that under regular Bank procedures, someone at Advice & Counsel would have investigated his complaint and informed Thompson of the complaint. The Court finds that Bender has raised a triable issue of fact as to whether Thompson became aware of the complaint, and DENIES summary judgment on this claim.[7]

### III.    FEHA harassment claim

Defendant asserts that it is entitled to summary judgment on plaintiff's claim for harassment due to plaintiff's failure to demonstrate the objective hostility of his work environment. Plaintiff appears to concede that summary judgment on this claim is appropriate, as plaintiff's opposition does not address this claim at all.

The Court agrees that plaintiff has failed to raise a triable issue of fact on his harassment claim and that defendant is entitled to summary judgment on this claim. To establish a harassment claim, plaintiff must show that he was subjected to conduct in the workplace that was "severe enough or sufficiently pervasive to alter the conditions of employment and create an work environment that qualifies as hostile or abusive," and that the conduct was directed at him because of his race or age. *Lyle*

---

[7] In a footnote, defendant also argues that it is entitled to summary judgment on Bender's claim for wrongful termination/retaliation in violation of public policy because those claims rise and fall with Bender's race discrimination and retaliation claims. Def's motion at 25 n.40. As such, the Court finds that summary judgment on this claim is not appropriate.

9

*v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). "To be pervasive, the . . . harassing conduct must consist of more than a few isolated incidents." *Hughes v. Pair*, 46 Cal. 4th 1035, 1048 (2009). Here, plaintiff's evidence of harassment consists of three comments made by Thompson – none of which directly refer to plaintiff's race or age – and Thompson's body language and refusal to shake his hand at the May 2007 meeting. This evidence does not establish a "concerted pattern of harassment of a repeated, routine or generalized nature." *Aguilar v. Avis Rent A Car System*, 21 Cal. 4th 121, 131 (1999). Accordingly, the Court GRANTS defendant's motion for summary judgment on plaintiff's claim for harassment under FEHA.

## IV. Age discrimination claims

Defendant moves for summary judgment on plaintiff's claims for age discrimination under FEHA and the Age Discrimination in Employment Act (ADEA). In order to make out a *prima facie* claim of age discrimination, Bender must show (1) he is age 40 or older, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action, and (4) he was replaced by a younger worker or some other circumstance suggesting a discriminatory motive. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (ADEA); *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 (2000) (FEHA).

The parties' dispute centers on whether Bender has established the fourth element of the *prima facie* case. For the reasons set forth above in footnote 5, the Court finds there is no evidentiary support for Bender's claim that he was replaced by Michaud. Bender also argues that he has raised an inference of age discrimination based on Thompson's statement to him that he "lacked energy." However, this comment does not refer to plaintiff's age, and there is no evidence that this comment was connected in any way to Bender's termination; Bender was not terminated for poor performance or "low energy." Courts have held that similar comments are "stray remarks" that are insufficient as a matter of law to prove pretext for age discrimination. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996) (supervisor's comment that he wanted to get rid of the "old timers" who did not "kiss the ass" of the supervisor did not support an inference of age discrimination because the comment was not tied directly to plaintiff's layoff, and "was ambiguous because it could refer as well to longtime employees

10

or to employees who failed to follow directions as to employees over 40."); *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 803, 810 (1999) (holding that isolated comment "this is 1994, haven't you ever heard of a fax before" was "highly ambiguous" and "at most a 'stray' ageist remark . . . entitled to virtually no weight in considering whether the firing was pretextual").

Accordingly, the Court finds that plaintiff has failed to raise a triable issue of fact regarding whether his termination was motivated by age discrimination, and GRANTS summary judgment in favor of defendant on this claim.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED in part and DENIED in part. (Docket No. 44).

**IT IS SO ORDERED.**

Dated: June 18, 2010

SUSAN ILLSTON
United States District Judge

11