IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANCE DAVIS,<br><br>        Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>        Defendant.                     / | No. C 09-129 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CONSTANCE DAVIS** |

On October 7, 2010, the Court held a hearing on defendant's motion for summary judgment as to plaintiff Constance Davis. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiff Constance Davis is a 41-year old African-American woman. Davis was employed by Bank of America three separate times, most recently from about November 2006 until her termination in November 2007. In her last position with Bank of America, Davis was hired as Vice President-Sales Manager to start a brand new mortgage loan office on Solano Avenue in Berkeley, California. As Sales Manager, Davis supervised a team of Mortgage Loan Officers ("MLOs") who dealt directly with customers. The MLOs on Davis' team were minorities and were tasked with marketing the Bank's products to the minority community. Individual offices were organized into geographical regions, which were led by the Regional Executives.

At the time Davis was hired, the Bank did not yet have a permanent space on Solano Avenue

1 for plaintiff's team. As a result, plaintiff's team was temporarily housed at the Bank's office on Grand
2 Avenue, in Oakland, California. The Grand Avenue office was the permanent office of Sales Manager
3 Keith Flavetta, who is Caucasian, and Flavetta's team of MLOs. The parties dispute the adequacy of
4 the temporary arrangement, with plaintiff asserting that her team was not able to use any of the desks,
5 phones or computers at the Grand Avenue location, except at night when the other employees vacated
6 the building. Defendant, in turn, contends that while at the Grand Avenue office, plaintiff's team had
7 free access to Flavetta's team's resources – resources that plaintiff otherwise would have had to
8 purchase with her own budget.

9 In May 2007, Ann Thompson became the new Regional Executive for Davis's region.
10 Thompson supervised thirteen Sales Managers, including Davis and plaintiffs Richard Adame and
11 Connie Bender. Davis, Adame and Bender were the only minority Sales Managers in the Bank's
12 Northern California region. Thompson is Caucasian. All three plaintiffs claim that Thompson
13 discriminated against them on account of their race, age, and/or religion.

14 Davis alleges, *inter alia*, that Thompson made a racist comment to her at an August 2007 sales
15 meeting when she told Davis to "stay in your hood." Davis Decl. ¶ 103. Davis also claims that
16 Thompson refused to call on her, Adame and Bender at sales meetings, and Davis states that she
17 "observed Thompson shaking hands, smiling, conversing with and even kissing the other Caucasian
18 sales managers," and that "[i]n contrast, Ann Thompson was cold to the minority sales managers." *Id.*
19 ¶ 98.[1] Davis states that when she would encounter Thompson in the hallway at work, she would make
20 eye contact with Thompson but that Thompson would always ignore her and walk past her as if she was
21 not there. *Id.* ¶ 55.

22 In July 2007, Davis complained to Thompson about the lack of resources for her team at the
23 Grand Avenue office. On July 12, 2007, Davis sent Thompson an email stating, *inter alia*, that "My
24 team is operating in an environment where they can see the disparity of treatment" between themselves
25 and Flavetta's team. Ryan Decl. Ex. C. Thompson replied, *inter alia*, that "There is not an issue of

---

[1] Defendant objects that Davis' statement that "Thompson was cold to the minority sales managers" is conclusory. The Court OVERRULES this objection, as Davis is stating her observation.
The parties have filed numerous evidentiary objections. This order only addresses those objections to the extent that this order cites the evidence at issue.

disparity of treatment" and that technical issues were "region-wide." *Id*. Davis was dissatisfied with Thompson's response, and sometime in July contacted the Bank's human resources department, Advice & Counsel, to complain about the "disparity in treatment." Davis Decl. ¶ 61.[2] Davis states that although the Advice & Counsel representative told her that the matter would be investigated and that someone would get back to her, nobody ever followed up with Davis regarding the complaint. *Id*. Davis also states that she called Advice & Counsel several times more between August and October 2007 to complain about Thompson, and that nobody ever contacted her about these complaints. *Id*. ¶¶ 106-09.

Several weeks after the July 12, 2007 complaint, the Bank authorized plaintiff to move her team to a different temporary location. Plaintiff was given the choice of two different temporary offices, one located on San Pablo Avenue and one on Franklin Street. Plaintiff states that the San Pablo office was in a dilapidated building with holes in the walls, and that she chose the Franklin Street office, which was located in a basement, as "the lesser of two evils." *Id*. ¶ 62. The Franklin Street office lacked telephones, did not have a fax line, and did not have Internet access. *Id*. ¶ 64. Davis asserts that these tools were essential for MLOs to conduct their business, and that her MLOs made multiple complaints to her about the lack of resources in the Franklin basement office. *Id*.

The parties dispute much about what happened next. According to defendant, after five days of working at the Franklin office, plaintiff and her team vacated the site because they felt ill. Plaintiff claims that she worked in that office for five weeks, not five days, and that during that time she and her team were exposed to mold, which caused her to become very ill. Plaintiff filed a worker's compensation claim, and missed numerous days of work. Defendant contends that plaintiff's absences were unexcused, and that Thompson repeatedly counseled Davis that she was required to inform her manager if she was going to be absent, and that she was expected to report to work for a partial day even if she had a medical appointment. Plaintiff claims, on the other hand, that was seriously ill as a result

---

[2] Defendant objects that plaintiff's testimony is hearsay, and that "disparity of treatment" is vague and ambiguous, conclusory, constitutes a legal conclusion, and lacks foundation. The Court OVERRULES these objections. Plaintiff may testify that she made a complaint to Advice & Counsel, and she may testify about the substance of that complaint.

of the mold exposure, that no one ever informed her about the Bank's "call-in" procedure,[3] and that "[d]espite not being required to call in, I nevertheless called or emailed [Regional Coordinator] Nancy Chambard or Ann Thompson each time I was out of the office on my worker's compensation claim because I was sick and unable to work." Davis Decl. ¶ 82.[4]

On October 22, 2007, Thompson and Chambard presented plaintiff with a final written warning regarding her attendance. Ryan Decl. Ex. P. On November 5, 2007, Thompson terminated plaintiff after plaintiff allegedly violated Thompson's "direct order" that she call Thompson or Chambard if she was going to miss work. Plaintiff claims that her termination was discriminatory. Plaintiff states that she complained repeatedly to Advice & Counsel about Thompson, and that on September 14, 2007, she filed a complaint with the EEOC against Thompson and the Bank. Defendant denies that Thompson discriminated against plaintiff or any other minority sales manager, and defendant asserts that plaintiff's numerous absences from work were disruptive and had a deleterious effect on her team of MLOs.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In

---

[3] This issue is discussed in greater detail *infra*.

[4] Defendant objects that this statement is conclusory and lacks foundation. This objection si OVERRULED.

4

judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.   § 1981, FEHA and Title VII race discrimination claims and FEHA failure to prevent discrimination claim**

Defendant moves for summary judgment on Davis's race discrimination claims under § 1981, FEHA and Title VII, as well as Davis's claim for failure to prevent discrimination under FEHA. Discrimination claims under these statutes are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* Then the burden shifts to the employer to respond with a legitimate, nondiscriminatory reason for its actions. *Id.* The burden then shifts back to the plaintiff to establish that the employer's articulated reason was a "pretext" or cover-up for unlawful discrimination. *Id.* The plaintiff bears the ultimate burden of establishing that she has been discriminated against on the basis of a protected characteristic. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993). However, the trier of fact may infer the existence of a discriminatory motive from the plaintiff's proof that the employer's proffered explanation is false. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000).

Defendant concedes for purposes of summary judgment that Davis has made out a *prima facie* case of race discrimination. Motion at 16 n.34. However, defendant contends that it is entitled to summary judgment because Bank of America had a legitimate, non-discriminatory reason for plaintiff's termination, namely plaintiff's "insubordination by repeatedly disobeying the express instructions of her manager . . . [which] culminated on October 29, when she defied Thompson's instruction that she

5

call Thompson or Chambard if she was going to miss work, following previous instances of failing to follow Thompson's direct orders." Motion at 16:10-12. Defendant has submitted deposition testimony and declarations from Bank employees, including Thompson and Chambard. Defendant argues that plaintiff's failure to prevent discrimination claim fails for the same reasons.

Plaintiff argues that summary judgment is inappropriate because she has raised a triable issue of fact as to whether Thompson's reason for terminating her was pretext for discrimination. Plaintiff asserts that she was never told by anyone at the Bank that she had to adhere to a "call-in" procedure. In her declaration, plaintiff states,

> In regards to the Bank's call-in procedure, I had no knowledge as to what that was. I was never informed as to how vice presidents are supposed to call in when they are sick or unable to be at work.
>
> Furthermore, as I was trained by the Bank, when an employee is absent because of a worker's compensation injury, we were not to call the employee, lest it look like we were pressuring the employee to return to work or retaliating against them for making a worker's compensation claim. In any event, if an employee was out on a worker's compensation claim, we knew they were absent because of the worker's compensation claim. We did not need the employee to call in and repeatedly say they were injured and not able to work.
>
> Moreover, to this day, I still do not know the call-in procedure that Ann Thompson was referring to.
>
> In fact, while working at the Bank as a vice president, nobody, including Ann Thompson and Nancy Chambard, ever handed me a document, showed me an email, directed me to anything on the Bank's intranet, or provided me with anything showing me what the Bank's call-in procedure was for a vice president.
>
> The only call-in procedure that I knew about was the one I had for the employees under my supervision. I never told an employee that was sick that if they failed to call in they would be subject to discipline, up to and including termination. It would be unreasonable for me as a manager for me to demand that someone who is sick and possibly unable to call, to nevertheless do so or they would be fired. I considered that to be a poor management style to force people to do things or act a certain way, or threaten them with termination.
>
> Despite not being required to call in, I nevertheless called or emailed Nancy Chambard or Ann Thompson each time I was out of the office on my worker's compensation claim because I was sick and unable to work.

Davis Decl. ¶¶ 77-82.[5] Plaintiff also states that "[o]f the approximately 30 days that I was ill and out on my worker's compensation claim, I was not able to call in on two days. During those two days, I was

---

[5] Defendant objects that these statements are speculative, irrelevant, and lack foundation. The Court OVERRULES these objections.

6

extremely ill, couldn't breathe, and could barely walk. It was impossible for me to make a call." *Id.* ¶ 84.[6]

Defendant's reply accuses plaintiff of "severely mischaracterizing the evidence," and argues that plaintiff was fired for disobeying the direct order of her supervisor, and not for violating a "call-in policy." Reply at 3:16-21. Defendant argues that "Plaintiff's attempts to manufacture pretext by referring to a 'policy' and avowing her lack of knowledge of this 'policy' are irrelevant diversions." *Id.* at 4:14-16. However, in support of its argument, defendant cites, *inter alia*, to the October 22, 2007 Final Written Warning issued by Thompson to plaintiff. Ryan Decl. Ex. V. That warning states,"Previously you have been counseled verbally on August 24, 2007 regarding your violations of the call-in policy, as well as not coming to work. Since that time you have had 6 additional 'Call-in Policy' violations. Your call in violations have become excessive. . . ." *Id.* Plaintiff refused to sign that document. In addition, the November 5, 2007 Termination Notice states that plaintiff was being terminated because "Your conduct including failure to follow policy and procedure regarding the bank call in procedures, is not acceptable . . ." Davis Decl. Ex. 6. Thus, although defendant states that the reason for plaintiff's termination was her insubordination, Thompson's written warning and termination notice specifically refer to a "Call-In Policy" and "Call-In Procedures."

"Proof that the defendant's explanation is unworthy of credence is [a] form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147; *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004) (summary judgment inappropriate because "the absence of any documentation confirming that a company hiring freeze was in place during the relevant time period is sufficient to raise a genuine factual dispute as to whether the asserted reason was pretextual"). The Court finds that there are numerous disputed issues of fact surrounding plaintiff's termination, including the existence of a "call in policy" and whether plaintiff was terminated for violating such a policy. Viewing the evidence in the light most favorable to plaintiff, including plaintiff's testimony that Thompson shunned her and other minority Sales Managers and told her to "stay in your hood," the Court concludes that summary judgment is not

---

[6] Defendant objects that this statement is conclusory. The Court OVERRULES this objection.

1 appropriate and DENIES defendant's motion.

## II.     FEHA retaliation claim

Plaintiff alleges that she filed complaints with Advice & Counsel and the EEOC about Thompson, and that Thompson retaliated against her by terminating her. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Morgan v. Regents of the Univ. of California*, 88 Cal. App. 4th 52, 69 (2000). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Id.* (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)).

Defendant contends that Davis cannot demonstrate the first and third elements of a retaliation claim. First, citing plaintiff's deposition testimony, defendant asserts that "Plaintiff admits she did not complain to Advice & Counsel about racial or religious discrimination while Thompson was Regional Executive." Reply at 13:13-14. However, the cited deposition testimony does not contain such an unqualified admission. Instead, when asked "did you ever indicate that you felt were you were discriminated against based on your race or your religion?" Davis testified, "I'm not sure of the exact words, but I did tell them that I felt as if there was some sort of disparity of treatment. I did mention being treated unfairly. I can't remember the exact words, to be honest with you, but I do remember complaining a lot with no resolution." Davis Depo. at 318:3-17 (Ryan Dec. Ex. A). In her declaration, Davis states that she complained to Thompson in a July 12, 2007 email "about the disparity in treatment between the minority mortgage loan officers that I managed and those similarly situated non-minority loan officers managed by other non-minority sales managers." Davis Decl. ¶ 60. Davis also states that after Thompson responded that there was no disparity in treatment, she called Advice & Counsel "and told them that Ann Thompson was treating me and my mortgage loan officers differently than she treated other similar non-minority employees and was engaging in disparity of treatment." *Id.* ¶ 61.

Defendant objects that Davis' declaration is inconsistent with her deposition testimony. The

8

1  Court disagrees. In both her deposition and her declaration, Davis testified that she complained about
2  "disparity of treatment." While her declaration is somewhat more specific than her deposition testimony
3  about the nature of her complaint, at her deposition Davis stated that she could not remember the exact
4  words she used when she complained, and she did not admit, as defendant suggests, that she did not
5  complain about racial discrimination. The Court finds that plaintiff has raised a triable issue of fact as
6  to whether she engaged in protected activity by complaining about "disparity of treatment" to Advice
7  & Counsel.[7] *See Yanowitz v. L'Oreal USA Inc.*, 36 Cal. 4th 1028, 1046-47 (2005).

Defendant also contends that plaintiff cannot establish a causal link between her protected activity and the adverse employment action. Plaintiff argues that there is a causal link because she complained to Advice & Counsel in July 2007 about Thompson, and Thompson terminated her in November of that year. Opposition at 18:10-14. Citing Thompson's deposition testimony, defendant argues that Thompson was not aware of any complaint by plaintiff to Advice & Counsel. However, in connection with plaintiff Bender's case, the Court noted that there was evidence showing that under regular Bank procedures, Advice & Counsel investigates complaints, and Thompson would normally be informed if a complaint was made against her. The Court finds that there is a triable issue of fact as to whether Thompson became aware of the complaint prior to terminating Davis, and accordingly, defendant's motion for summary judgment on this claim is DENIED.[8]

### III. FEHA harassment claim

Defendant contends that it is entitled to summary judgment on plaintiff's claim for harassment due to plaintiff's failure to demonstrate the objective hostility of her work environment. To establish a harassment claim, plaintiff must show that she was subjected to conduct in the workplace that was "severe enough or sufficiently pervasive to alter the conditions of employment and create an work

---

[7] The parties' briefing on this issue focuses on plaintiff's complaint to Advice & Counsel, and not her September 2007 EEOC complaint. Filing a complaint with the EEOC constitutes protected activity.

[8] In a footnote, defendant also argues that it is entitled to summary judgment on Davis's claim for wrongful termination/retaliation in violation of public policy because those claims rise and fall with Davis's discrimination, harassment and retaliation claims. Def's Reply at 25 n.48. As such, the Court finds that summary judgment on this claim is not appropriate.

9

environment that qualifies as hostile or abusive," and that the conduct was directed at her because of her race. *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). "To be pervasive, the . . . harassing conduct must consist of more than a few isolated incidents." *Hughes v. Pair*, 46 Cal. 4th 1035, 1048 (2009).

In support of her hostile work environment claim, plaintiff asserts that she and her team of minority MLOs were required to use substandard offices; that she was not assigned a full-time assistant although Caucasian Sales Mangers were provided with such assistance; that she was not credited for her sales, which instead went to a Caucasian manager; her numerous complaints to Advice & Counsel were ignored; and that her termination was pretextual. Plaintiff also claims that Thompson refused to provide her with support and guidance, made a racist comment to her during a meeting ("stay in your hood"), and treated her and the other minority sales managers differently than Caucasian sales managers. For example, plaintiff claims that Thompson refused to call on minority sales managers in meetings, refused to shake their hands despite the fact that she hugged and kissed non-minority sales managers, and used negative body language with plaintiff.

Defendant disputes all of plaintiff's evidence, and Thompson denies all of plaintiff's allegations about her conduct. However, viewing the totality of the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has raised a triable issue of fact sufficient to withstand summary judgment, and DENIES defendant's motion for summary judgment on the hostile work environment claim. *See McGinest*, 360 F.3d at 1113-14 (summary judgment on hostile work environment claim was inappropriate where plaintiff claimed he was forced to work in dangerous conditions, prevented from collecting overtime pay that he worked, and that foreman treated black employees worse than white employees).

## IV.  Religious discrimination claims

Plaintiff alleges that Thompson discriminated against her on account of her religion, Islam. Defendant contends that plaintiff cannot establish a *prima facie* case of discrimination. A plaintiff alleging disparate treatment on the basis of religion has the burden of establishing a *prima facie* case by showing that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she

10

experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Plaintiff's evidence of religious discrimination is the following: plaintiff states that in August 2007, when she was dressed in a business suit and wearing a head scarf, Thompson told her that she needed to "dress up" for an important business meeting. Davis Decl. ¶ 115. Davis interpreted Thompson's comment as a discriminatory statement about her head scarf, which Davis was wearing because of her religion. *Id.* Defendant argues that this is insufficient to establish a *prima facie* case because she has not submitted any evidence regarding the religion of the person who replaced Davis, nor has she submitted any evidence that would give rise to an inference of religious discrimination. Defendant argues that there is no evidence that Thompson knew that Davis was Muslim. Defendant has submitted Thompson's deposition testimony, in which she states that she did not know that Davis was a Muslim. Davis counters that Thompson knew she was a Muslim because during a sales meeting in August 2007, Davis told another employee, Erin Ross, that she was a Muslim, and Thompson was sitting next to Ross.

The Court agrees with defendant that plaintiff has not established a *prima facie* case of disparate treatment based on religion because she has not shown the fourth element of the *prima facie* case. Even assuming that Thompson knew plaintiff was a Muslim, the single comment about "dressing up" does not give rise to an inference that Thompson's termination of plaintiff was based on religious animus. In the absence of any evidence giving rise to the inference of religious discrimination, plaintiff must submit "comparator" evidence that non-Muslims were treated more favorably, which she has not done. Moreover, even plaintiff had met her *prima facie* burden, she has not raised a triable issue of fact as to pretext because she has "failed to come forward with any direct evidence that religious discrimination more likely motivated [Thompson] to terminate her." *Bodett v. CoxCom Inc.*, 366 F.3d 736, 745 (9th Cir. 2004) (affirming summary judgment on religious discrimination claim both for failure to meet *prima facie* case and failure to show pretext).

Accordingly, the Court GRANTS defendant's motion for summary judgment on plaintiff's

11

religious discrimination claims.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED in part and DENIED in part. (Docket No. 85).

**IT IS SO ORDERED.**

Dated: October 13, 2010

SUSAN ILLSTON
United States District Judge